STATE OF NEBRASKA, APPELLEE, V. ERNIE W. CHAMBERS, APPELLANT.

486 N.W.2d 481

Filed July 17, 1992. No. S-90-983.

Ernie W. Chambers, pro se.

Don Stenberg, Attorney General, Wynn Clemmer, Kenneth W. Payne, and, on brief, Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

The defendant-appellant, Ernie W. Chambers, challenges the district court's affirmance of the county court's judgment that he violated Neb. Rev. Stat. § 39-662 (Reissue 1988) by operating a motor vehicle in excess of the posted speed limit of 65 miles per hour. We affirm.

The only trial witness, Michael Robinson, is a 16-year veteran of the Nebraska State Patrol, who has enforced speed limits his whole career and has worked as a speed enforcement officer for 2 years. He testified that at 2:10 p.m. on July 29, 1989, he was parked at the extreme south edge of the Alda interchange in Hall County, Nebraska, approximately 600 feet from Interstate 80, when, through the use of a machine known as the VASCAR Plus, he clocked the defendant's vehicle traveling at 76.6 miles per hour. Robinson also testified that independent of the machine reading, he, on the basis of his

visual observation of the vehicle, determined that it was traveling at "about 77" miles per hour.

Neb. Rev. Stat. § 39-664 (Reissue 1988) provides in part:

(1) Determinations made regarding the speed of any motor vehicle based upon the visual observation of any law enforcement officer may be corroborated by the use of radio microwaves or other electronic device. The results of such radio microwave or other electronic speed measurement may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue. Before the state may offer in evidence the results of such radio microwave or other electronic speed measurement for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:

(a) The measuring device was in proper working order at the time of conducting the measurement;

(b) The measuring device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;

(c) The person operating such device and interpreting such measurement was qualified by training and experience to properly test and operate the device; and

(d) The operator conducted external tests of accuracy upon the measuring device, within a reasonable time both prior to and subsequent to an arrest being made, and the measuring device was found to be in proper working order.

Based on that statute, the defendant asserts that the district court erred in not finding that the county court erred on the record in:

concluding without sufficient evidence that the VASCAR Plus speed measuring device was accurate on the day of the arrest.

. . . receiving into evidence, over objection, the purported speed reading derived from a device not proved to have been tested properly.

. . . concluding that officer was properly trained to operate the VASCAR, solely on the basis of hearsay

evidence received over objection.

   . . . finding that the VASCAR Plus was operated properly.

Robinson described the machine used to measure the speed of the defendant's vehicle as a "speed measuring device which . . . uses the computations of distance and time to determine speed." The machine has two manually operated toggle switches, "[o]ne for feeding distance in the moving mode and the other is for feeding in the time." The timing switch on the machine is engaged when the vehicle enters the premeasured zone and is disengaged when the vehicle reaches the end of the zone.

Thus, the record suggests that the machine is but a stopwatch combined with a calculator. It appears that by dividing the traveltime into a premeasured distance set into the machine, the machine computes the rate of travel in miles per hour. In this instance, the machine was set for a distance of .1992 miles, the premeasured distance through which the defendant's vehicle was clocked. That is all that can be determined with reasonable certainty about the machine from this record. For example, although Robinson testified that he had received training in the use of the machine from its manufacturer, he, in attempting to explain how he tested the machine for accuracy on the day in question, said:

> I drive through this distance using the time and distance and recall the distance and it checks against what I have. And I must — The distance measured over is .2500 miles. And then I can recall and check after I drive through and measure it. . . . [I]t . . . has to be plus or minus. . . . .0006 and then if it is within that plus or minus of 20 — it would be .2500, then it is deemed to be accurate.

If that description has meaning, it is not discernible to us. The quality of the record concerning the operation and testing of the machine is such that the plaintiff-appellee, the State, failed to prove compliance with § 39-664. The county court, therefore, erred in receiving in evidence the machine reading of the defendant's rate of travel.

However, whether the district court erred in affirming the judgment of the county court is another matter, for, as noted

earlier, Robinson testified that in his opinion, independent of the machine's reading, the defendant was traveling in excess of the posted speed limit. The applicable rule is that the erroneous admission of evidence in a bench trial of a law action, including a criminal case tried without a jury, is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings. See, *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992); *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991). In such a case, a reversal is warranted if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. See *State v. Chambers, ante* p. 60, 486 N.W.2d 219 (1992).

Not only has the defendant not assigned any error to the county court's admission of Robinson's opinion testimony, although he objected to its receipt at trial, but the testimony was properly received.

Notwithstanding the patrol's policy not to issue citations solely on the basis of a trooper's opinion of a driver's rate of travel, § 39-664 provides that determinations of speed based on a law enforcement officer's visual observation "*may* be corroborated" by the use of other devices. (Emphasis supplied.) Thus, the use of corroborative devices is not mandatory, and an officer's observation of speed alone, if otherwise admissible, is sufficient to sustain a conviction.

The defendant objected to the receipt of Robinson's opinion on the ground that an inadequate factual basis had been laid. However, Neb. Rev. Stat. § 27-705 (Reissue 1989) provides that an "expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

We have stated that in order to determine whether an expert's testimony is admissible pursuant to the Nebraska Evidence Rules, four preliminary questions must be answered:

(1) Does the witness qualify as an expert pursuant to Neb.

Evid. R. 702? (2) Is the expert's testimony relevant? (3) Will the expert's testimony assist the trier of fact to understand the evidence or determine a controverted factual issue? (4) Should the expert's testimony, even though relevant and admissible, be excluded in light of Neb. Evid. R. 403?

*State v. Reynolds*, 235 Neb. 662, 679-80, 457 N.W.2d 405, 417 (1990).

A witness may qualify as an expert by virtue of either formal training or actual practical experience in the field. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). See Neb. Rev. Stat. § 27-702 (Reissue 1989). In *Stahl*, an officer qualified as an expert in drug identification based on his 120 hours in training and extensive practical experience. Similarly, in citing *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984), we wrote: "Though the officer had no experience in botany and knew little about the scientific tests used to identify marijuana, he did have 9 years' experience in law enforcement, during which time he learned ' "what it looks like and what the seeds look like." ' " *Stahl*, 240 Neb. at 506, 482 N.W.2d at 835. See, *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990); *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989). The focus in determining whether someone qualifies as an expert is on the individual's knowledge on a topic, irrespective of whether that knowledge was derived from formal education or practical experience.

With respect to measuring speed, in *Herman v. Lee*, 210 Neb. 563, 571, 316 N.W.2d 56, 61 (1982), an accident case involving a reconstructionist's calculation of speed from the evidence, we observed that "an opinion of vehicular speed is proper, provided a sufficient foundation is laid to show the expertise of the witness, as well as specific knowledge of the underlying facts to deal with the question in issue."

At the time Robinson was permitted to state his opinion of the defendant's rate of travel, he had established that he had been trained in visually estimating the speed of vehicles and certified as capable of making such estimates, that he had enforced speed limits for 16 years, and that enforcing speed limits had been his specialty for the preceding 2 years. Thus, the

county court could properly consider Robinson an expert, by virtue of both training and experience.

In addition, Robinson had, by implication, established that he had observed the defendant travel a distance of approximately one-fifth of a mile, the distance between the point at which the defendant entered the premeasured distance used in connection with the machine's measurement of the defendant's rate of travel (when the timing switch needed to be engaged) and the point at which he exited that area (when the timing switch had to be disengaged). Thus, there was, when Robinson's opinion was received, a sufficient showing that he had specific knowledge of the underlying facts to enable him to form and express his opinion. Beyond that, on cross-examination Robinson was questioned extensively about his training and the facts revolving around his observation of the defendant. Robinson stated that in the left-hand lane which the defendant's vehicle occupied, there were no vehicles either behind or in front of the defendant's for a distance of a quarter of a mile when Robinson first observed that the defendant was speeding. In fact, when asked why he focused on the defendant's vehicle, Robinson responded: "Because of my visual observation before the vehicle got there that it was an excessive speed limit [sic] and it was also passing the other traffic in the passing lane." It was Robinson's opinion that the vehicles in the right-hand lane were traveling at 67 miles per hour. Thus, the opinion as to the defendant's excessive speed has two independent levels of competence. First, Robinson visually estimated the defendant's rate of travel at 77 miles per hour. Second, the defendant was seen overtaking vehicles in the right-hand lane which were observed to be moving at a speed 2 miles over the limit.

On the matter of the driver's identity, the record shows that the vehicle in question traveled approximately $2^{1}/_{2}$ miles between the point at which Robinson first saw it and the point at which Robinson pulled the vehicle over. Robinson remarked that although he could not identify the driver when he first saw the vehicle and although he did not have the vehicle in sight at all times while it traveled that distance—because the vehicle was being operated in the left-hand lane and had traveled only 2

miles and because the probability of someone stopping on I-80 and changing drivers was so small—the defendant, the person he stopped, had to have been the person driving the vehicle.

The rule is that although in determining the sufficiency of circumstantial evidence to support a conviction, any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused, such evidence is sufficient to support a conviction if it and the reasonable inferences which may be drawn therefrom establish guilt beyond a reasonable doubt. *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992). There was, as to the speeder's identity, no fact or circumstance reasonably susceptible of two interpretations; the question was only whether, under the conditions described by Robinson, his identification of the defendant as the driver was reliable and, thus, credible. As we repeatedly point out, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. See, *State v. Brewer, ante* p. 24, 486 N.W.2d 477 (1992); *State v. Johnson*, 240 Neb. 924, 485 N.W.2d 195 (1992); *State v. Waltrip*, 240 Neb. 888, 484 N.W.2d 831 (1992).

While the defendant finds the relationship between Robinson's opinion of his speed and the machine's measurement of it suspiciously close, it is within the province of the trier of fact to determine the weight the opinion should be given. See *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990). Moreover, as noted in *Melanson v. State*, 188 Neb. 446, 197 N.W.2d 401 (1972), the precise amount by which a speed was exceeded is not an essential element of the offense of speeding; it is necessary only that the evidence show the limit was exceeded. See, also, *Milwaukee v. Berry*, 44 Wis. 2d 321, 171 N.W.2d 305 (1969) (testimony of experienced officer, who observed vehicle travel a distance of one block, that speed exceeded speed limit sufficiently probative to satisfy burden of proof, notwithstanding that officer did not state rate of travel).

The distinction between this case and *State v. Chambers,* *ante* p. 60, 486 N.W.2d 219 (1992), also decided today, is that whereas the record in the case first decided establishes that the trial court, acting as the trier of fact therein, specifically relied on inadmissible evidence in finding that the speed limit had been exceeded, the record in this case does not so demonstrate. Here, the trial court merely found that the State had met its burden of proof.

One other matter remains for comment. In his reply brief, the defendant attempts to question the amount of the appeal bond. However, the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Keithley v. Black,* 239 Neb. 685, 477 N.W.2d 806 (1991). Because the appellee would have no opportunity to respond, a reply brief cannot be used to raise new matters.

AFFIRMED.