STATE OF NEBRASKA, APPELLEE, v. ERNIE W. CHAMBERS, APPELLANT.

486 N.W.2d 219

Filed July 17, 1992.    No. S-90-975.

Ernie W. Chambers, pro se.

Don Stenberg, Attorney General, Kenneth W. Payne, and, on brief, Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant, Ernie W. Chambers, was convicted of driving 75 miles per hour in a 65-mile-per-hour zone, in violation of Neb. Rev. Stat. § 39-662 (Reissue 1988). Upon appeal to the district court, the judgment was affirmed. He has now appealed to this court.

The defendant's three assignments of error, when summarized, allege that the district court erred in failing to find that the county court erred in (1) receiving, over defendant's objection, the speed reading taken from a "VASCAR Plus" speed-measuring device, and (2) "engaging in conduct so prejudicial as to deny the defendant a fair and impartial trial."

The record shows that on February 1, 1989, Nebraska State Patrol Trooper Mark Van Horn observed the defendant driving a blue Honda Civic and preparing to pass other vehicles on Interstate 80 near the Highway 77 interchange north of Lincoln, Nebraska. Van Horn estimated the defendant's speed to be 75 to 78 miles per hour and, using a VASCAR Plus speed-measuring device (VASCAR), clocked the defendant traveling at 75.3 miles per hour.

VASCAR is an acronym for Visual Average Speed Computer and Recorder. Unlike a radar unit, a VASCAR unit does not emit a signal; instead, VASCAR calculates the speed of a vehicle by employing the formula: speed equals distance divided by time. One component of the VASCAR unit is connected to the odometer cable of the patrol car and can be used to measure distances. A properly calibrated VASCAR unit is capable of accurately measuring a distance, even though the vehicle's odometer may not accurately measure the same distance. Another component of VASCAR is a timing or clocking device

which measures the elapsed time between the time an officer manually activates and then deactivates the VASCAR clock. This clocking component employs a quartz crystal in measuring the elapsed time.

David Johnson, a Nebraska State Patrol trooper, testified that there are several methods by which VASCAR can be used to measure a vehicle's speed. In one method, an officer enters a known, predetermined distance into the VASCAR unit, then activates the VASCAR's timing component when the vehicle reaches the beginning point of the predetermined distance and deactivates the timing component when the vehicle reaches the ending point of the predetermined distance. Using the predetermined distance and the elapsed time, the VASCAR unit calculates the speed of the vehicle. On the day the defendant was cited for speeding, Trooper Van Horn clocked the defendant traveling a predetermined distance of .1892 mile.

Law enforcement personnel can test the accuracy of the VASCAR's distance-measuring component against a pre-measured distance. The accuracy of the VASCAR's clocking and calculating components can be tested by first entering a predetermined distance into the VASCAR unit and then using an accurate stopwatch to time the activation and deactivation of the timing component of the VASCAR unit. For example, if an officer enters .2500 mile as the predetermined distance, he can then use a stopwatch to time a 15-second interval between the activation and deactivation of the VASCAR's timing component. The VASCAR unit, if operating properly, will register a speed of 60 miles per hour. Johnson testified that he normally uses this method to test the accuracy of the timing and calculating components of VASCAR.

On the day he cited the defendant for speeding, Van Horn did not use a stopwatch to test the accuracy of his VASCAR unit, but instead tested the VASCAR for accuracy against his B36 radar unit. Van Horn testified that he used the B36 radar unit to determine the speed of his own vehicle and that he verified the accuracy of his VASCAR unit "by driving an average speed of 60 miles per hour for approximately a quarter mile." On redirect examination, the State attempted to show that Van Horn's test of the VASCAR's accuracy was more than just an

approximation. However, Van Horn only testified that he verified his VASCAR unit's accuracy by traveling a "certain" distance at a "certain" rate of speed, and that he then "used the radar to compare it to the speed displayed on the VASCAR unit." On the basis of that test, he testified that the VASCAR unit was shown to be working accurately "[w]ithin the tolerances [of] one quarter of one percent."

Van Horn further testified that he tested the accuracy of his B36 radar unit in the manner in which he was trained, but the record does not show how Van Horn tested his radar unit, nor does it show how Van Horn was trained to test his radar unit.

The defendant first contends that the district court erred in failing to find that the county court erred in receiving, over his objection, the speed reading taken from the VASCAR unit, and he premises his argument upon Neb. Rev. Stat. § 39-664 (Reissue 1988). That section provides that before the State may offer the results of a speed-measuring device, it must first prove, among other things, that "[t]he operator conducted external tests of accuracy upon the measuring device, within a reasonable time both prior to and subsequent to an arrest being made, and the measuring device was found to be in proper working order."

There is no question in this case but that Van Horn properly tested the distance-measuring component of his VASCAR unit and found it to be operating accurately. However, the patrol car was stationary at the time Van Horn observed the defendant, and Van Horn did not use the distance-measuring component of the VASCAR unit in determining the defendant's speed. Thus, verifying the accuracy of the distance-measuring component of the VASCAR unit did nothing to verify the accuracy of its timing, or clocking, mechanism.

The defendant contends that the State failed to prove that the required external tests of accuracy were conducted with respect to the clocking component of Van Horn's VASCAR unit. The State, on the other hand, argues that Trooper Johnson's testimony shows that because the timing mechanism in Van Horn's VASCAR unit employs a quartz crystal, the accuracy of the mechanism is, in essence, self-proving. However, this contention cannot be sustained in light of the requirements of

§ 39-664(d). Consequently, the State must rely solely upon Van Horn's test of his VASCAR unit by his B36 radar unit in order to prove that Van Horn conducted an "external" test of accuracy upon the timing component of the VASCAR unit.

Citing cases from other jurisdictions, the defendant contends that all reported cases dealing with VASCAR accuracy tests have required the use of a certified stopwatch to test the accuracy of a VASCAR unit, and he argues that Van Horn's method of testing the accuracy of his VASCAR unit against his radar unit is not sufficient to prove the "external tests of accuracy" required by § 39-664(d). We assume for purposes of this opinion that it is appropriate to use radar to conduct an external test of the accuracy of a VASCAR unit.

In *State v. Chambers*, 233 Neb. 235, 240-41, 444 N.W.2d 667, 670-71 (1989), we stated:

> *To sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be "[r]easonable proof that the . . . machine was accurate and functioning properly." State v. Kudlacek*, 229 Neb. 297, 301, 426 N.W.2d 289, 292 (1988) (foundation relating to accuracy of radar unit and Intoxilyzer machine). See, also, *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969). In *Snyder* and *Kudlacek*, we rejected the argument that for admissibility of information from a primary instrument, the accuracy of the primary instrument, such as a measuring device, must be established by an appropriate testing device which itself has been tested for accuracy, lest such evidence of testing and the testing itself "might have to proceed ad infinitum" to verify the accuracy of all instruments used. *State v. Snyder, supra* at 466, 168 N.W.2d at 531. See, also, *Peterson v. State*, 163 Neb. 669, 80 N.W.2d 688 (1957) (an officer's testimony that he drove his patrol car at 60 miles per hour, indicated by the car's speedometer, through the testing range for the radar device used to prove the speed of the defendant's vehicle was sufficient foundation for admissibility of the radar-determined speed without proof of the speedometer's accuracy). Thus, although we have rejected a requirement that any testing device used to

establish the accuracy of a primary measurement device must itself be independently tested, we have recognized such a procedure to thwart a foundational challenge to the primary device's accuracy. See *State v. Chambers*, 207 Neb. 611, 299 N.W.2d 780 (1980) (mechanical stopwatch tested with a Vibrograph, which was in turn itself tested against another Vibrograph).

*Without some proof of reliability in the device used to test for accuracy in a primary device, a test for accuracy of the primary device is a meaningless exercise. . . .* In any event, we hold that *to present "reasonable proof" that a stopwatch was operating correctly as an accurate device to measure time, the watch must be tested against a device whose instrumental integrity or reliability has been established either through proof that the testing device's accuracy has been verified through an independent test for accuracy or through proof that the testing device is the type recognized and normally used to verify accuracy in stopwatches.*

(Emphasis supplied.)

In the present case, Van Horn used his B36 radar to test the accuracy of his VASCAR unit, and he testified that he tested his radar in the manner in which he was trained. However, as noted previously, the record contains no indication of how Van Horn tested his radar unit, nor does it show how Van Horn was trained to test the radar unit. Van Horn's mere recital that he tested the B36 radar is insufficient to show that the radar unit's accuracy had been "verified through an independent test for accuracy." See *State v. Chambers*, 233 Neb. at 241, 444 N.W.2d at 671. Based upon the record before us, for all we know, Van Horn tested the accuracy of his B36 radar against his VASCAR unit, and vice versa.

Furthermore, absent proof of the radar unit's accuracy, such a unit is not a testing device of the type recognized and normally used to verify the accuracy of VASCAR.

Although the State failed to prove compliance with § 39-664, which was a foundational prerequisite to admissibility of the VASCAR speed reading, the State argues that the judgment should nevertheless be affirmed because Van Horn is trained to

estimate a vehicle's speed based upon visual observation and because Van Horn observed the defendant's vehicle and estimated it to be traveling 75 to 78 miles per hour. However, this contention ignores the specific findings of the trial court with respect to the defendant's guilt. The county court stated: "I do find that the Vascar reading, that the foundation and the testimony concerning the Vascar reading was — I do find that there is foundation and the testimony concerning the Vascar reading is persuasive and I do find that the defendant is guilty of speeding." Thus, it is clear from the record in this case that the county court specifically relied upon the improperly admitted VASCAR reading in finding the defendant guilty of speeding. Consequently, the judgment must be reversed.

Because the county court's error in admitting the reading from Van Horn's VASCAR unit was "trial error" and does not bar a retrial, the cause must be remanded for a new trial. See *State v. Chambers*, 233 Neb. 235, 444 N.W.2d 667 (1989).

As a result of our disposition of the defendant's first summarized assignment of error, it is unnecessary to consider his second summarized assignment of error.

The judgment is reversed and the cause remanded with directions to remand the cause to the county court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.

FAHRNBRUCH, J., not participating in the decision.