STATE OF NEBRASKA, APPELLEE, V. RICKY G. HINGST,
APPELLANT.

550 N.W.2d 686

Filed June 18, 1996.   No. A-95-1120.

Mark A. Johnson and Dennis W. Morland, of Johnson & Morland, P.C., for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

HANNON, SIEVERS, and MUES, Judges.

MUES, Judge.

Ricky G. Hingst appeals his conviction of driving while under the influence of intoxicating liquor (DUI), second offense, by the county court for Pierce County as affirmed by the district court for Pierce County. For the reasons recited below, we reverse.

## STATEMENT OF FACTS

On October 26, 1994, at approximately 3:30 a.m., Officer Matthew Roskens of the Pierce Police Department approached the vehicle of Ricky G. Hingst. The officer had observed Hingst's vehicle as it drove out of Pierce on Highway 13. According to the officer, the vehicle appeared to cross both the center line and the shoulder line of the road. When the officer approached the car, Hingst, who had been driving the car, explained that the car had suddenly accelerated and was suffering from mechanical problems. The officer testified that at that time he could detect the odor of an alcoholic beverage on Hingst's breath, and Hingst was speaking quickly. The officer also found a partial six-pack of beer in Hingst's car including two open bottles. Officer Roskens called his dispatcher and requested assistance.

While waiting for the other officer to arrive, Hingst was allowed to work on his car, which he could not get started. Hingst, who was a mechanic, told the officer that he believed the fuel pump had malfunctioned. During his attempts to get the car started, Hingst sucked gasoline into his mouth and then spit it out.

At approximately 4 a.m., Pierce County Deputy Sheriff Scott Blair arrived at the scene. Deputy Blair testified that he detected the odor of an alcoholic beverage on Hingst's breath and that Hingst's eyes were bloodshot. Deputy Blair requested that Hingst perform three field sobriety tests. Hingst failed twice to correctly recite the alphabet. In addition, when requested to count backward from 100 to 79, Hingst continued to count backward to 59. The third test, a finger dexterity test, Hingst performed correctly. However, Hingst failed to follow the deputy's directions in that he began the test before being told to begin. The deputy noted that Hingst's speech was slurred at this

time. Hingst also admitted to consuming 2½ beers. Deputy Blair testified that it was his opinion that Hingst was under the influence of alcohol at that time.

Officer Roskens eventually arrested Hingst. Hingst was then transported to the Pierce County sheriff's office, where Deputy Blair read Hingst the "Administrative License Revocation Advisement Post Arrest" form, advising him of the consequences of taking and failing or refusing to take a breath test. Hingst consented to a breath test and signed the form. Deputy Blair administered the breath test, which indicated that Hingst had an alcohol concentration in his breath of .129 of a gram of alcohol per 210 liters of breath. Hingst was charged with DUI, second offense, a Class W misdemeanor pursuant to Neb. Rev. Stat. § 60-6,196 (Reissue 1993).

On March 15, 1995, jury selection was conducted, and the trial before the jury was held on March 22. During the trial, the Administrative License Revocation Advisement Post Arrest form which had been read to and signed by Hingst was offered and received into evidence without objection, as well as testimony regarding the perception of one of the officers that Hingst was intoxicated at the time of the stop. Following the trial, the jury entered a verdict of guilty.

On April 26, 1995, an enhancement hearing was held. At the hearing, the county court sentenced Hingst to 30 days in jail, ordered him to pay a $500 fine, and revoked his license for 1 year. Hingst appealed this decision to the district court for Pierce County, which affirmed the conviction and sentence. This appeal timely followed.

## ASSIGNMENTS OF ERROR

On appeal, Hingst asserts that the district court erred by (1) failing to find that the county court erred in overruling Hingst's motion to dismiss based upon double jeopardy; (2) failing to find plain error in that Hingst was not properly advised of the consequences of submitting to a breath test; and (3) failing to find plain error in that the jury selection for his trial was conducted on March 15, 1995, and the jury trial was not held until March 22.

## STANDARD OF REVIEW

■ Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995).

■ Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995).

## ANALYSIS

We will first address Hingst's assertion that the district court erred by failing to find plain error in the admission of the Intoxilyzer test results into evidence, since the advisory form read to Hingst prior to the chemical test did not properly advise Hingst of the consequences of submitting to the test. Hingst asserts that the advisory form read to him prior to his submitting to the Intoxilyzer test was inadequate because it was the same advisement ruled inadequate in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995). Although Hingst failed to object to the admission of the advisory form or the Intoxilyzer results at trial, he nonetheless argues that we should find that the admission of the Intoxilyzer results was plain error.

In *Smith v. State*, the Nebraska Supreme Court interpreted Neb. Rev. Stat. § 60-6,197(10) (Reissue 1993), which provides that an arrestee "shall be advised of . . . the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of [§ 60-6,196(1)]." The court found that the "Legislature intended drivers to be advised of the natural and direct legal consequences flowing from submitting to a chemical test and failing it." *Id.* at 365, 535 N.W.2d at 697-98.

In *Smith v. State*, the court held that while the advisory form partially complied with § 60-6,197's mandate requiring that drivers be advised of the consequences of failing a chemical test, it did not inform an arrestee of all of the administrative

consequences of taking and failing the test. Among the consequences that the advisory form failed to inform the arrestee of were that the results of a valid chemical test could be competent evidence in any prosecution involving a DUI offense and that other, more serious penalties could result from a test disclosing an illegal concentration of drugs or alcohol. As a result, the court concluded that the advisory form was inadequate for purposes of the administrative license revocation statutes. See Neb. Rev. Stat. § 60–6,205(6)(c) (Reissue 1993).

While the Nebraska Supreme Court has not yet addressed this issue in a criminal context, it has reaffirmed the *Smith v. State* doctrine in *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996), and *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996). In both *Perrine* and *Biddlecome*, the Nebraska Supreme Court held that the inadequacy of the advisory forms used, which were identical or similar to that in *Smith v. State*, constituted plain error. Specifically, the court in *Perrine* and *Biddlecome* reasoned that because the Legislature made the advisement of consequences mandatory and the advisory form was inadequate, there was no authority to revoke the arrestee's license pursuant to the administrative license revocation statutes.

This court, however, has addressed this issue in a criminal context in *State v. McGurk*, 95 NCA No. 45, case No. A–95–162 (not designated for permanent publication). In *McGurk*, we found that the advisement read to the arrestee was inadequate under the holding in *Smith v. State, supra,* and we therefore reversed his conviction for refusal to submit to a breath test.

We have also been presented with this issue in cases where the arrestee has appealed a conviction for DUI. See, *State v. Smith, ante* p. 66, 537 N.W.2d 539 (1995); *State v. Hatcliff*, 95 NCA No. 45, case No. A–95–198 (not designated for permanent publication). In *State v. Smith*, we addressed the criminal appeal of the same arrestee as in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995). This court, however, did not address the issue of whether the trial court erred by receiving into evidence the results of a chemical breath test. Instead, we held that because the trial was a bench trial and there was other admissible evidence to sustain Smith's conviction of the crime

charged without the test results, the conviction should be affirmed.

■ In *State v. Hatcliff, supra*, also an appeal from a conviction for DUI, this court concluded that the results of a blood test which were preceded by an inadequate advisement were erroneously admitted into evidence in light of the Nebraska Supreme Court's ruling in *Smith v. State, supra*. However, we held that because the evidence had been admitted in a bench trial, as was the case in *State v. Smith, supra*, the error did not result in an automatic reversal. Specifically, this court relied on *State v. Chambers*, 241 Neb. 66, 70, 486 N.W.2d 481, 484 (1992), which held that "the erroneous admission of evidence in a bench trial of a law action, including a criminal case tried without a jury, is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings." A reversal is warranted in such a case only where the record shows that the trial court actually made a factual determination or otherwise resolved a factual issue or question through the use of erroneously admitted evidence. *Id.*

In light of the foregoing analysis, we must conclude that the advisory form read to Hingst, which was identical to or substantially similar to the form used in *Smith v. State, supra*, and its progeny, was inadequate. As in *Smith v. State*, the form failed to detail all of the consequences for taking and failing the chemical test, including that the results of such a test can be used as competent evidence in a proceeding such as this one or that other, more serious penalties may result. Furthermore, under the recent holdings in *Perrine v. State, supra*, and *Biddlecome v. Conrad, supra*, the inadequacy of the advisory form is such as to constitute plain error. Therefore, we conclude that the district court erred in failing to find that the results of the chemical test should have been excluded from evidence.

■ The State argues that regardless of the form, there is other relevant evidence admitted which is sufficient to sustain Hingst's conviction for DUI. See, *State v. Smith, supra*; *State v. Hatcliff, supra*. However, unlike in *State v. Smith* or *State v. Hatcliff*, Hingst was convicted following a jury trial, not a bench trial. In a jury trial of a criminal case, an erroneous

evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33 (1993). As was stated in *State v. Carter*, harmless error review looks to the basis on which the jury actually rested its verdict. The inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial surely was not attributable to the error. *Id.*

There was arguably other evidence which indicated that Hingst was intoxicated at the time of his arrest, including testimony that Hingst's eyes were bloodshot, that he smelled of an alcoholic beverage, that he spoke rapidly, and that his speech was slurred. However, the evidence is not such that one can say that the guilty verdict was surely unattributable to the chemical test. In fact, a large portion of the State's testimony was centered on the reliability of chemical test procedures. Moreover, the very definition of plain error is such that it precludes us from finding that the error was harmless beyond a reasonable doubt.

> Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which *prejudicially affects a substantial right* of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

(Emphasis supplied.) *In re Estate of Morse*, 248 Neb. 896, 897, 540 N.W.2d 131, 132 (1995). Therefore, we find that the admission into evidence of the chemical test results was prejudicial to Hingst.

Although we believe that the chemical test results were erroneously admitted into evidence and that this warrants a reversal, it is necessary for a complete resolution of this appeal that we examine the sufficiency of the evidence to support Hingst's conviction. See, e.g., *State v. Jimenez*, 3 Neb. App. 421, 530 N.W.2d 257 (1995), *modified* 248 Neb. 255, 533 N.W.2d 913. The court in *State v. Lee*, 227 Neb. 277, 283, 417

N.W.2d 26, 30 (1987), instructed that "[i]f it appears the evidence is sufficient to support the convictions, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient . . . the cause must be dismissed." Based upon the facts previously cited, and construing those facts in favor of the State, see *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994), we find that there is sufficient evidence to support the conviction. For the foregoing reasons, we reverse the judgment of conviction for DUI and remand the cause for a new trial.

Accordingly, we will not fully address Hingst's other assignments of error. We will note, however, that the Supreme Court's decision in *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996), effectively rendered Hingst's double jeopardy claim meritless. As to Hingst's claimed error in jury selection, such is unlikely to recur upon retrial provided there is adherence to the principles of *State v. Cisneros*, 248 Neb. 372, 535 N.W.2d 703 (1995), and L.B. 1249, Ninety–fourth Legislature, Second Session, both of which postdated the first trial.

## CONCLUSION

Because we find that there was plain error regarding the adequacy of the advisory form read to Hingst and further that this error was not harmless beyond a reasonable doubt, we reverse the judgment of the district court with directions that the judgment of conviction of the county court be reversed and the matter be remanded to county court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.