STATE OF NEBRASKA, APPELLEE,
v. KELLY R. CHRISTNER, APPELLANT.

557 N.W.2d 707

Filed January 17, 1997.   No. S-96-200.

G. Peter Burger, of Burger & Bennett, P.C., for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Kelly R. Christner claims that due to the test result from an improperly obtained sample of his blood, a Red Willow county judge convicted him of operating or being in the actual physical control of a motor vehicle while he had an excessive concentration of alcohol in his body.

Upon Christner's appeal to the district court for Red Willow County, that court affirmed Christner's county court conviction.

Christner then appealed to the Nebraska Court of Appeals. We transferred the matter to this court's docket pursuant to our authority to regulate the dockets of the two appellate courts.

We reverse Christner's conviction and direct that the charge against him be dismissed.

## FACTS

The sole charge against Christner, for which he was convicted in the Red Willow County Court, was that Christner, while operating a motor vehicle upon the public streets and highways within Red Willow County, violated that portion of Neb. Rev. Stat. § 60-6,196 (Reissue 1993) which provides, in pertinent part: "It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle: . . . (b) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood . . . ."

Christner entered a not guilty plea to the charge and waived a jury trial. At a bench trial, certain facts contained in the arresting officer's report and certain other facts were received in evidence by stipulation of the parties. It was also stipulated that if certain witnesses were called to testify, they would lay the necessary foundation for the introduction into evidence of exhibit 5, which is a report of the McCook Community Hospital clinical laboratory. The report reflects that shortly after Christner was arrested, a sample of his blood was taken, and that a chemical test of it revealed that Christner had a concentration of .10 of 1 gram or more by weight of alcohol per 100 milliliters of his blood, to-wit: .188. Christner objected to the court's receiving in evidence the test result, because he was not adequately advised of the consequences of his taking or refusing to submit to a blood test. The trial court overruled Christner's objection and admitted into evidence the result of his blood test.

The status of this appeal is such that if Christner's blood test result should not have been received in evidence, then there was insufficient evidence to convict him of the violation with which he was charged. On the other hand, if the trial court properly received into evidence Christner's blood test result, Christner's conviction should be affirmed.

## ASSIGNMENTS OF ERROR

Restated, Christner contends that the trial court erred in (1) receiving into evidence the result of his blood test and (2) finding that the evidence supported a finding that he had .10 of 1 gram or more by weight of alcohol per 100 milliliters of his blood, in violation of § 60-6,196.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *State v. Lujano, ante* p. 256, 557 N.W.2d 217 (1996); *State v. Johnson*, 250 Neb. 933, 554 N.W.2d 126 (1996); *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995).

In a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed; therefore, an appellant must show that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through use of erroneously admitted evidence in a case tried without a jury. *State v. Lujano, supra*; *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991). See, also, *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992).

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. The trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *State v. Johnson, supra*; *State v. Hand*, 244 Neb. 437, 507 N.W.2d 285 (1993).

On appeal, if it appears the evidence is sufficient to support a conviction, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient, the cause

must be dismissed. *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987). See *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

## ANALYSIS

Under his first assignment of error, Christner contends that the administrative license revocation postarrest advisement (advisory form) read to him prior to his agreeing to take a blood test did not adequately advise him of the consequences of submitting to a blood test, as required by Neb. Rev. Stat. § 60-6,197(10) (Reissue 1993) and this court's decision in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995). Specifically, Christner contends that the advisory form did not advise him that the result from his blood test could be used against him in a criminal proceeding. It is undisputed that the advisory form read to Christner prior to his blood test was the same as the advisory form adjudged statutorily inadequate under § 60-6,197(10) in *Smith*.

In *Smith*, we addressed the issue of whether an arresting officer, by reading an advisory form, gave a driver-arrestee adequate notice, as required by· § 60-6,197(10), of the consequences of failing a chemical test. We held that the advisory form read to the defendant in *Smith* prior to the administration of his chemical breath test failed to fully inform him of the consequences of submitting to, or submitting to and failing, a chemical test as mandated by § 60-6,197(10). That statute, in relevant part, provides:

> Any person who is required to submit . . . to a chemical blood, breath, or urine test or tests . . . *shall be advised* of (a) the consequences of refusing to submit to such test or tests and (b) the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of subsection (1) of section 60-6,196.

(Emphasis supplied.)

(As an aside, we note that the Nebraska Legislature amended the foregoing provision, with an operative date of February 27, 1996, to read: "Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section

shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(10) (Cum. Supp. 1996).)

We held in *Smith v. State*, 248 Neb. at 365, 535 N.W.2d at 697-98, that "[t]he sensible reading of § 60-6,197(10) indicates that the Legislature intended drivers to be advised of the natural and direct legal consequences flowing from submitting to a chemical test and failing it." We found that the advisory form in *Smith* failed to inform the defendant that "the results of a valid chemical test could be competent evidence in any prosecution involving a driving under the influence offense." *Id.* at 366, 535 N.W.2d at 698. Citing our decision in *State v. Deets*, 234 Neb. 307, 450 N.W.2d 696 (1990), we concluded in *Smith* that the purpose of requiring an officer to advise a driver-arrestee of the consequences of refusing to take a breath test was to ensure that the driver-arrestee was in a position to make a rational and voluntary decision as to whether to submit to a chemical test. As a result, we held that the advisory form used in *Smith* was statutorily inadequate because it did not inform a driver-arrestee of all of the consequences of submitting to and failing a chemical test. We ultimately held that the defendant's motor vehicle operator's license could not be revoked by the director of the Nebraska Department of Motor Vehicles because the defendant was not fully informed of the consequences of submitting to a chemical test for alcohol concentration in his body.

We have reaffirmed our *Smith* decision in *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996), and in *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996).

As previously stated, the key question in Christner's appeal is whether the result of his chemical blood test should have been received in evidence when he had not been fully advised of the consequences of taking the test, including the fact that the test result could be used against him in a criminal prosecution.

This court has not ruled upon the issue involved in the case at bar as it pertains to a criminal case. However, the Court of Appeals has held that when a driver-arrestee has not been fully informed of the consequences of taking a chemical test to determine the concentration of alcohol in his or her body, his or her refusal to take the test is not admissible in evidence to support

a criminal charge of refusing to take such a test. *State v. McGurk*, 95 NCA No. 45, case No. A-95-162 (not designated for permanent publication). The Court of Appeals, in *State v. Hatcliff*, 95 NCA No. 45, case No. A-95-198 (not designated for permanent publication), held that the results of a blood test which were preceded by an inadequate advisement of the consequences of taking the test are inadmissible in a criminal case to prove the concentration of alcohol in a driver-arrestee's body. The Court of Appeals reached the same conclusion in a criminal case, *State v. Hingst*, 4 Neb. App. 768, 550 N.W.2d 686 (1996). On petition for further review by this court, we affirmed the Court of Appeals' judgment. See *State v. Hingst, ante* p. 535, 557 N.W.2d 681 (1997).

A driver-arrestee who is required to submit to a chemical blood, breath, or urine test under § 60-6,197 should be advised of the natural and direct legal consequences of submitting to a chemical test. See *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995). Such consequences include that any incriminating results from such a test may be used against the person in a criminal proceeding. *Id.* Thus, we determine that in a criminal case, if the defendant was read an inadequate advisory form before taking the test, it is error for a trial court, over the defendant's objection, to admit into evidence the results of a chemical blood, breath, or urine test to prove the concentration of alcohol in the defendant's body.

In this case, the trial court could not have determined that Christner was operating a motor vehicle with .10 of 1 gram or more of alcohol per 100 milliliters of his blood without relying upon the results of Christner's blood test. The record clearly establishes the fact that the county court, acting as the trier of fact, relied upon the results of Christener's blood test to reach its factual finding that Christner operated his motor vehicle with .10 of 1 gram or more of alcohol per 100 milliliters of his blood in his body. It is also clear that the court based its legal conclusion that Christner operated his motor vehicle while he had .10 of 1 gram or more of alcohol per 100 milliliters of his blood based on Christner's blood test.

In *State v. Chambers*, 241 Neb. 66, 70, 486 N.W.2d 481, 484 (1992), we held that "the erroneous admission of evidence in a

bench trial of a law action, including a criminal case tried without a jury, is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings." A reversal is warranted in such a case "if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence." *Id.* (citing *State v. Chambers*, 241 Neb. 60, 486 N.W.2d 219 (1992)).

In this case, there is no other evidence to support a finding that Christner had .10 of 1 gram or more of alcohol per 100 milliliters of his blood, an essential element of the crime with which he was charged and upon which he was tried and convicted. The trial court relied explicitly and exclusively upon the result of a blood test to find Christner guilty of the charge against him.

Although we are compelled to reverse Christner's conviction, we must examine the sufficiency of the evidence presented against him in order to resolve this matter completely. See *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987). See, also, *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

In *Lee*, we stated that "[i]f it appears the evidence is sufficient to support the convictions, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient . . . the cause must be dismissed." 227 Neb. at 283, 417 N.W.2d at 30.

After a careful examination of the record, we find that no properly admissible evidence was obtained upon which Christner could be convicted of either operating or having actual physical control of a motor vehicle upon the public streets and highways while he was under the influence of alcohol or while he had an illegal concentration of alcohol in his body.

Therefore, we must reverse Christner's conviction and direct that the charge against him be dismissed.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

FAHRNBRUCH, J., concurring.

I agree with the majority that it is error for a trial court, over a defendant's objection, to admit into evidence the results of a chemical blood, breath, or urine test to prove the concentration of alcohol in the defendant's body if the defendant was read an inadequate advisory form before taking the test. The dissenters contend that the legislative intent behind Neb. Rev. Stat. § 60-6,197(10) (Reissue 1993), as it stood at the time relevant to this case, controlled the meaning of the statute. To support their contention, the dissenters cite legislative history, as well as the revised version of § 60-6,197(10) that followed this court's decision in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995).

In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature *as ascertained from the entire language of the statute* considered in its plain, ordinary, and popular sense. See, *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996); *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996); *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995).

Section 60-6,197(10), as it stood at the time relevant to this case, provided, in relevant part:

> Any person who is required to submit . . . to a chemical blood, breath, or urine test or tests . . . *shall be advised* of (a) the *consequences* of refusing to submit to such test or tests and (b) the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of subsection (1) of section 60-6,196.

(Emphasis supplied.) The dissenters contend that the above statutory language, when read in light of its legislative history, should be construed to mean something less than what it says. Specifically, the dissenters contend that "the only relevant consequences contemplated by § 60-6,197(10) are the penalties for refusing to submit to a chemical test and for failing a chemical test." The language of § 60-6,197(10) does not support such a contention.

When the Legislature enacted § 60-6,197(10), it mandated that a driver-arrestee be advised of "*the natural and direct legal*

*consequences flowing from submitting to a chemical* [*blood, breath, or urine*] *test and failing it," Smith,* 248 Neb. at 365, 535 N.W.2d at 697-98, because the Legislature substantively required, by the words of the statute, that any person who is required to submit to a chemical test be advised of the *consequences* of submitting to such a test. Section 60-6,197(10) contains no language limiting the advisement of consequences in the manner suggested by the dissenters.

Under the law of this state, statutes covering substantive matters in effect at the time of the transaction govern, not later enacted statutes. See *State v. Groff,* 247 Neb. 586, 529 N.W.2d 50 (1995).

The dissenters seemingly have forgotten that beginning with the founding of this nation one of the basic reasons for courts to exist is to protect the individual from arbitrary acts of government. The right to be fully advised of the consequences of taking or refusing to take a chemical test for alcohol was granted by the Legislature in § 60-6,197(10). The dissenters ignore the plain language of the statute as it existed at the time of Christner's arrest and would arbitrarily take away a right of Christner's which was bestowed upon him by the Legislature.

Accordingly, I concur in the majority's decision because at the time of Christner's arrest *Smith* was the controlling law and § 60-6,197(10) had *yet* to be revised. The advisory form read to Christner was inadequate, and the trial court erred in receiving Christner's blood test result into evidence.

WHITE, C.J., joins in this concurrence.

CONNOLLY, J., dissenting.

In my opinion, the advisory form which the law enforcement officer read to Christner, prior to his blood test, was adequate under Neb. Rev. Stat. § 60-6,197(10) (Reissue 1993) to advise Christner of the penal consequences of refusing to submit to the test and of failing the test.

It is undisputed that the advisory form read to Christner is the same as the advisory form that was at issue in *Smith v. State,* 248 Neb. 360, 535 N.W.2d 694 (1995). Thus, the only discernible difference between *Smith* and the instant case is that *Smith* arose in the context of an administrative license revoca-

tion proceeding, whereas the instant appeal arises from a criminal prosecution for driving under the influence.

As in *Smith*, the majority of this court once again ignores the legislative intent behind § 60-6,197(10). See *Smith v. State, supra* (Connolly, J., dissenting). This is so, as the majority notes, despite the Nebraska Legislature's having amended § 60-6,197(10), which now provides: "Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(10) (Cum. Supp. 1996).

While this amended version of § 60-6,197(10) is not applicable in the instant case, it is clear that the amendment was "in direct response to the July 1995 ruling of the Nebraska Supreme Court in a case called *Smith v. State*." Public Hearing, L.B. 939, Committee on Transportation, 94th Leg., 2d Sess. 17 (Jan. 16, 1996). At the public hearing for L.B. 939, Senator Douglas A. Kristensen, principal introducer, stated:

> The logical conclusion of the Supreme Court's ruling could be an unending and an unlimited advisement form. . . . That could affect all drunk driving cases in this state. That's not the logical conclusion. That's not what the Legislature intended, and it certainly isn't what good public policy should be.

*Id.* at 18-19.

Clearly, the only relevant consequences contemplated by § 60-6,197(10) are the penalties for refusing to submit to a chemical test and for failing a chemical test. In the instant case, the advisory form which the law enforcement officer read to Christner advised him of the criminal penalties for first, second, third, and fourth or subsequent convictions for both offenses. As a result, Christner was sufficiently informed of the requisite consequences. Accordingly, the trial court was correct in receiving Christner's blood test result, and therefore, I would affirm.

WRIGHT and GERRARD, JJ., join in this dissent.