STATE OF NEBRASKA, APPELLEE, V. RODNEY P. KUDLACEK, APPELLANT.

426 N.W.2d 289

Filed July 22, 1988.   No. 87-861.

John C. Person, of Person, Dier & Person, for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Rodney P. Kudlacek, was convicted of driving while intoxicated, first offense, and was placed on probation for 1 year and fined $100, and his driver's license was suspended for 60 days. Upon appeal to the district court, the judgment was affirmed.

The defendant has appealed to this court and contends (1) that the trial court erred in overruling his motion to suppress and (2) that the trial court erred in receiving into evidence, without sufficient foundation, the results of the Alco-Sensor preliminary breath test and the Intoxilyzer test.

The record shows that on September 1, 1985, at approximately 11:30 p.m., the defendant was stopped by Nebraska State Patrol Officer Larry E. Williams at a location

approximately 3 miles east of Alma, Nebraska, on U.S. Highway 136. The defendant was stopped because the radar unit in Officer Williams' patrol car showed the defendant's vehicle traveling at 64 m.p.h. in a 55 m.p.h. zone. Officer Williams told the defendant of the reason for the stop and at that time noticed that the defendant had a light odor of alcohol on his breath, his eyes were bloodshot and pupils contracted, and his face was flushed. Officer Williams placed the defendant in his patrol car and administered the horizontal gaze nystagmus test, which the defendant passed. The defendant was then required to perform the walk-and-turn test and the one-leg stand, both of which he failed. Officer Williams then administered the Alco-Sensor preliminary breath test, which the defendant failed. The defendant was placed under arrest and taken to the Harlan County sheriff's office in Alma, where a chemical test of his breath indicated a blood alcohol level of .133 percent.

Prior to trial the defendant filed a motion to suppress the results of the Intoxilyzer Model 4011AS test and any equilibrium test because no probable cause had existed to stop the defendant's vehicle. The hearing on the motion to suppress was held simultaneously with the trial. The court denied the motion to suppress and found that there had been probable cause to stop. The defendant contends that there was insufficient foundation evidence to establish the accuracy of the radar unit, and, therefore, the radar reading was not admissible as evidence of probable cause to stop the defendant.

"Evidence of the readings of radar equipment designed to determine the speed of moving vehicles is admissible as evidence of speed if a sufficient foundation is laid as to the accuracy of the equipment in operation." *State v. Green*, 217 Neb. 70, 76, 348 N.W.2d 429, 433 (1984); *Peterson v. State*, 163 Neb. 669, 80 N.W.2d 688 (1957). "Reasonable proof that the particular radar equipment employed on a specific occasion was accurate and functioning properly is all that is required." *State v. Snyder*, 184 Neb. 465, 467, 168 N.W.2d 530, 532 (1969).

We think the evidence was sufficient to show that the radar unit operated by Officer Williams was accurate and functioning properly. At 1:30 a.m. on September 1, 1985, Officer Williams

performed three tests on the model S-80 radar unit that was in his patrol car. The first test was the light test to determine that all light bars within the radar unit were operating. The second test involved the use of tuning forks to check the machine's calibration. Officer Williams explained that the radar unit comes with two tuning forks, one fork certified at 80 m.p.h. and the other at 35 m.p.h. The machine is tested by turning on the radar and placing the fork in front of each radar antenna. The machine should record a reading of 80 m.p.h. for the 80 m.p.h. fork and a reading of 35 m.p.h. for the 35 m.p.h. fork.

Finally, an internal calibration test was performed by comparing the patrol window on the radar with the speedometer in the patrol car. All three tests demonstrated that the unit was functioning properly.

The tests were performed at the end of Officer Williams' shift. Between that time and the time the defendant's vehicle was stopped, approximately 22 hours later, the radar unit was not used.

The defendant argues that because the unit was not tested immediately prior to the time the defendant's vehicle was stopped, the foundation evidence required to show the unit's accuracy was lacking.

Officer Williams testified that the State Patrol would like to have the officers calibrate the radar units at the beginning and end of each shift and that he in fact did not calibrate the unit at the beginning of the shift during which the defendant was stopped. However, he also testified that there are no regulations or procedures concerning the testing of radar units and that the tests he performed were conducted pursuant to the normal practice in his district station. Under the facts in this case, the fact that the unit was not tested immediately prior to the time the defendant's vehicle was stopped did not create an inference that the unit was not functioning properly.

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly wrong. *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988). The evidence was sufficient for the trial court to find that the radar unit was properly functioning.

In his second assignment of error, the defendant contends the foundational evidence was not sufficient for the trial court to receive into evidence the results of the preliminary breath test and the Intoxilyzer breath test. He specifically contends that the results from both tests should not have been admitted because the State failed to prove that the tests were properly conducted in accordance with a method currently approved by the Nebraska Department of Health, as required by *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980).

The defendant's specific complaints go to the certificate attached to the copy of the rules and regulations of the Department of Health which was received in evidence and to the simulator solution used in the maintenance of the Intoxilyzer machine.

The certificate attached to the certified copy of Neb. Admin. Code tit. 77, ch. 1 (1985), which contains the rules and regulations relating to methods and techniques approved by the Department of Health, was dated January 28, 1985, and recited that the rules were in force "up to December 22, 1984." The defendant argues that the foundation evidence was deficient because there was no showing that the rules were in effect on September 2, 1985, the date on which the defendant's breath was tested. No contention is made and no evidence was offered to suggest that the rules or regulations had been amended during the intervening period.

At the time the exhibit was offered and received in evidence the defendant made no objection to the offer, and the exhibit was received in evidence without objection. Under these circumstances any objection to the exhibit was waived. A defendant may not predicate error on the admission of evidence to which a timely objection was not made. *State v. Blair*, 227 Neb. 742, 419 N.W.2d 868 (1988).

The defendant's second complaint relates to the certification of the beam attenuator reference standard which was performed by Deputy Christopher Becker on December 26, 1984. In that procedure, a solution, No. 65, supplied by the Department of Health is used. The solution has a known alcohol content value of .10 percent weight per volume at 34°C.

The argument is similar to that which was made in *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969), regarding the test of radar equipment. In the *Snyder* case the defendant contended that it was not sufficient to test radar equipment with a calibrated tuning fork and by using a speedometer check with another patrol car unless there is additional evidence that the comparative testing devices were also proved to be accurate and functioning properly. In regard to that argument, we said, "We cannot agree. Such a chain of evidence might have to proceed ad infinitum." *Id*. at 466, 168 N.W.2d at 531.

We then held that reasonable proof that the equipment was accurate and functioning properly was all that was required. See, also, *Peterson v. State*, 163 Neb. 669, 80 N.W.2d 688 (1957).

We believe a similar rule is applicable in this case. Reasonable proof that the Intoxilyzer machine was accurate and functioning properly is all that is required as foundation evidence. The record in this case shows that requirement was satisfied.

The judgment of the district court is affirmed.

AFFIRMED.