STATE OF NEBRASKA, APPELLEE, V. WILLIE LOMACK, JR., APPELLANT.

476 N.W.2d 237

Filed October 25, 1991.   No. 91-120.

John O. Frey, of Vestecka, Buethe & Frey, for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In a bench trial in the county court for Lancaster County, Willie Lomack, Jr., was convicted of driving an automobile at 32 miles per hour in a 25-mile-per-hour zone, in violation of Neb. Rev. Stat. § 39-662(2)(a) (Reissue 1988) (25 miles per hour in a residential district), and was sentenced to pay a fine of $15 and costs. Lomack appealed to the district court for Lancaster County, which affirmed Lomack's conviction; hence, Lomack appeals to this court and argues that the trial court erred by admitting evidence of the radar-determined velocity of Lomack's automobile.

## STANDARD OF REVIEW

Lomack's appeal involves a relatively minor traffic offense in the operation of an automobile at a speed 7 miles per hour greater than that allowed by law. Nevertheless, Lomack, as a criminal defendant, is afforded several constitutional and procedural safeguards, including the due process requirement that every factual element of the offense charged must be proved beyond a reasonable doubt. See *State v. Harney*, 237 Neb. 512, 514, 466 N.W.2d 540, 543 (1991): "Due process in a criminal case requires that the prosecution prove, beyond a reasonable doubt, every factual element necessary to constitute the crime charged against a defendant." Accord *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991). See, also, *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

"In a bench trial of a criminal case, the trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous." *State v. Oldfield*, 236 Neb. 433, 443, 461 N.W.2d

554, 561 (1990). Accord, *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). Regarding bench trials of a criminal case, that is, cases tried without a jury, this court has often stated:

> [I]n a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant, and this court will not overturn such a decision where there is sufficient material, competent, and relevant evidence to sustain the judgment.

*State v. Schroder*, 218 Neb. 860, 869-70, 359 N.W.2d 799, 806 (1984). Accord *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987). The "presumption" that a trial court, as a fact finder, disregards inadmissible evidence has also been applied in appellate review of civil cases. See, *Suess v. Lee Sapp Leasing, Inc.*, 229 Neb. 755, 428 N.W.2d 899 (1988); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986). However, what has previously been characterized as a "presumption" that a trial court disregarded inadmissible evidence in a case tried without a jury is not a presumption, i.e., a fact inferred from another known or proved fact or facts, but is really a principle of appellate procedure which requires an appellant to show that the trial court actually used erroneously admitted evidence for the judgment or decision against the appellant. Consequently, in a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed; therefore, an appellant must show that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through use of erroneously admitted evidence in a case tried without a jury. See *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987).

## REQUIREMENTS FOR ADMISSIBILITY
## OF RADAR-DETERMINED VELOCITY

Before evidence of a vehicular speed determined by use of

radar equipment is admissible, the State, as required by Neb. Rev. Stat. § 39-664(1) (Reissue 1988), must establish the equipment's accuracy when the determination of speed was made. See, *State v. Kudlacek*, 229 Neb. 297, 426 N.W.2d 289 (1988); *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984); *Peterson v. State*, 163 Neb. 669, 80 N.W.2d 688 (1957). Section 39-664(1) specifies the requirements for admissibility of evidence from a radar device:

> Determinations made regarding the speed of any motor vehicle based upon the visual observation of any law enforcement officer may be corroborated by the use of radio microwaves or other electronic device. The results of such radio microwave or other electronic speed measurement may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue. Before the state may offer in evidence the results of such radio microwave or other electronic measurement for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:
>
> (a) The measuring device was in proper working order at the time of conducting the measurement;
>
> (b) The measuring device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;
>
> (c) The person operating such device and interpreting such measurement was qualified by training and experience to properly test and operate the device; and
>
> (d) The operator conducted external tests of accuracy upon the measuring device, within a reasonable time both prior to and subsequent to an arrest being made, and the measuring device was found to be in proper working order.

This court has consistently held that " '[r]easonable proof that the particular radar equipment employed on a specific occasion was accurate and functioning properly is all that is required.' " *Kudlacek, supra* at 298, 426 N.W.2d at 291. See, also, *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969).

A tuning fork test may be sufficient to satisfy the "external test" requirement of § 39-664(1). In *State v. Kincaid*, 235 Neb. 89, 453 N.W.2d 738 (1990), this court upheld a speeding conviction based on radar evidence, when the arresting officer in *Kincaid* had tested the accuracy of his radar unit by using two tuning forks which had been "supplied by the manufacturer and were tested at the factory." *Id*. at 92, 453 N.W.2d at 740. Further, in *Kincaid*, we recognized that a properly conducted tuning fork test was one of two valid methods for demonstrating a radar unit's accuracy and, therefore, the unit's reliability as a source of evidence:

"Evidence that radar equipment was tested within a few hours of its use, by means of a calibrated tuning fork, or by a comparison with the speedometer of a motor vehicle driven through the radar field, and was functioning properly, is sufficient evidence of the accuracy of the radar equipment."

*Id*. at 91, 453 N.W.2d at 740 (quoting *State v. Snyder, supra*). *Kincaid*, however, specifically requires that the tuning fork used to test a radar unit must be calibrated, that is, verified or authenticated as a proper instrument for the test. Similarly, in *State v. Kudlacek, supra*, the arresting officer used two tuning forks which had been "certified" at 80 and 35 miles per hour, respectively.

## FACTUAL BACKGROUND

Near noon on April 25, 1990, Patrolman Terry Lee Brummer of the Lincoln Police Department was conducting a vehicular speed check by radar at 19th and D Streets in Lincoln and observed an automobile approaching Brummer's position at an estimated speed greater than 25 miles per hour. Brummer glanced at his radar unit, which, by digital readout, indicated the approaching car's velocity at 30 miles per hour. As the car approached Brummer's position, the vehicle accelerated to 32 miles per hour, according to Brummer's radar unit. Brummer then stopped the radar-clocked vehicle driven by Lomack and issued him a traffic citation for driving 32 miles per hour in a 25-mile-per-hour zone.

At Lomack's trial on the charge corresponding to the

citation, Brummer testified that he tested the radar unit before and after issuing the citation to Lomack. On direct examination by the prosecutor, Brummer described a "light test" and an "internal circuitry test" to ascertain whether his radar unit was operating and then testified about an external test involving a tuning fork: "[Y]ou take a tuning fork and tap it on something that is non-metalic and you hold it in front of the radar unit and you get a 35 miles per hour readout and that indicates that your external antenna is working correctly."

Direct examination of Brummer continued: "Q And when you did the tuning fork test, where did — what reading did you get? A 35. Q And was this reading on the tuning fork [sic] consistent with the value inscribed on the tuning fork? A Yes."

Brummer also testified that he repeated the tuning fork test about 1¹/₂ hours after issuance of the citation to Lomack: "Q And when you did the tuning fork test [after stopping Lomack], what did you observe? A Top display read out 35."

Lomack made timely objections (relevancy; deficient foundation) regarding introduction of the radar-obtained evidence of his vehicle's velocity. After the court overruled Lomack's objections, Brummer testified concerning the 32-mile-per-hour readout on his radar unit in reference to Lomack's car. The only specific evidence introduced on the issue of speed was Brummer's testimony based on his observations of the radar unit monitored by Brummer at the speed check. The court found Lomack guilty in accordance with the charge against him, a conviction upheld on appeal to the district court.

### RADAR-BASED EVIDENCE AGAINST LOMACK

Section 39-664(1) reflects recognition that a motor vehicle's radar-determined velocity is relevant evidence on the issue of the vehicle's speed in reference to a violation of a statutorily prescribed speed limit. "Relevant evidence" is characterized in Neb. Evid. R. 401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1989). However, Neb. Evid. R. 402

provides:

> All relevant evidence is admissible except as otherwise provided by the Constitution of the United States or the State of Nebraska, by Act of Congress or of the Legislature of the State of Nebraska, by these rules, or by other rules adopted by the Supreme Court of Nebraska which are not in conflict with laws governing such matters. Evidence which is not relevant is not admissible.

Neb. Rev. Stat. § 27-402 (Reissue 1989). Thus, relevant evidence is admissible unless excluded by law, including a constitutional provision; a statute, whether state or federal; the Nebraska Evidence Rules; or a rule adopted by the Supreme Court of Nebraska consistent with law governing this court's rulemaking authority. Consequently, in view of Rule 402, relevancy does not assure that evidence is admissible. For example, subject to exceptions, evidence of subsequent remedial measures, although relevant, is inadmissible in a negligence action. See Neb. Evid. R. 407. Other illustrations of inadmissible relevant evidence are found in Neb. Evid. R. 503 to 510, which exclude evidence involving a privilege, and in Neb. Evid. R. 801 and 802, exclusion of hearsay which may contain relevant evidence. Section 39-664(1), therefore, excludes relevant evidence of radar-determined speed unless the State fulfills the requirements for admissibility under the statute.

At Lomack's trial, Brummer indicated that he used an unidentified tuning fork to test the radar unit which supplied information about the speed of Lomack's automobile and stated that the unit displayed the number "35" when the vibrating tuning fork, "inscribed" with a "35," was held in front of the machine. Nevertheless, the radar-based evidence of speed is inadmissible for two reasons in view of § 39-664(1). First, the record fails to establish a particular connection between the tuning fork and Brummer's radar unit. A tuning fork is essentially a two-pronged steel bar that vibrates at a specific individual pitch which is retained almost indefinitely. 27 The Encyclopedia Americana *Tuning Fork* 221 (Int'l ed. 1990); 10 The New Encyclopaedia Britannica, Ready Reference and Index, *Tuning Fork* 184 (15th ed. 1982). Brummer's

testimony fails to establish that the tuning fork in question was particularly designed and intended for testing Brummer's radar unit and thereby fails to show that the tuning fork was in any way associated with the radar unit tested. Without that established relationship between the tuning fork and Brummer's radar unit, evidence of the tuning fork was irrelevant, for, as we expressed in *State v. Lonnecker*, 237 Neb. 207, 210, 465 N.W.2d 737, 740-41 (1991), "[t]o be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided." Second, even assuming that the tuning fork used by Brummer was recognized as an instrument for testing Brummer's radar unit, there is no evidence that the tuning fork itself was in any way properly tested, calibrated, or certified as a reliable gauge of a radar unit's accuracy. In *State v. Chambers*, 233 Neb. 235, 241, 444 N.W.2d 667, 671 (1989), we stated, "Without some proof of reliability in the device used to test for accuracy in a primary device, a test for accuracy of the primary device is a meaningless exercise," and concluded that the "reasonable proof" standard required by *State v. Kudlacek*, 229 Neb. 297, 426 N.W.2d 289 (1988), and *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969), necessitated at least some indication of accuracy in an instrument used to test a measuring device.

The only information offered for the tuning fork's reliability as a testing device is the number "35" inscribed on the tuning fork, the same number that the radar unit displayed when the tuning fork was struck and held in front of the unit. However, the State presented no evidence that this numerical inscription somehow provides a basis for reliability of the tuning fork as a means to test a radar unit, such as verified calibration consistent with the inscription. The most that can be said about the tuning fork in question is that it has been inscribed with a "35." There is a substantial difference and dissimilarity between a device or instrument that is certified or calibrated and one that is merely inscribed. "Certified" means "endorsed authoritatively: guaranteed or attested as to quality, qualifications, fitness, or validity." Webster's Third New International Dictionary, Unabridged 367 (1981). The term

"calibrate" means "to standardize (as a measuring instrument) by determining the deviation from standard [especially] so as to ascertain the proper correction factors." *Id*. at 316. In contrast, the term "inscribed" means "having lines or other markings deeply impressed or having the appearance of written letters." *Id*. at 1168. "Certified" and "calibrated" both connote assurance of accuracy; however, "inscribed" carries no such connotation. "Inscribed," at most, connotes only that something bears an inscription, i.e., something written, and, in Lomack's case, an inscription which, by itself, establishes no significant relationship between the tuning fork and Brummer's radar unit. In short, the record in Lomack's case lacks the indicia of accuracy required by *Kudlacek* and *State v. Kincaid*, 235 Neb. 89, 453 N.W.2d 738 (1990), concerning Brummer's radar unit. Without the requisite proof of accuracy in Brummer's radar unit, evidence of the radar-determined speed of Lomack's vehicle was inadmissible under § 39-664(1).

We note that § 39-664(1) requires a rather uncomplicated procedure to meet the statutory foundation for admission of radar evidence in a contested speeding case: The State must (1) establish the connection between the testing instrument and the radar equipment tested and (2) show that the testing instrument was itself a valid means for testing the radar equipment's accuracy.

Because the State failed to satisfy the requirements for admissibility under § 39-664(1), Brummer's testimony concerning radar-determined velocity of Lomack's car was erroneously admitted and should not have been considered in Lomack's trial. Since inadmissible evidence of radar-determined evidence was the evidence on which Lomack's conviction is based, we set aside Lomack's conviction and remand this cause to the district court with direction to reverse the county court's judgment concerning Lomack's conviction and order a new trial for Lomack in the county court. See, *State v. Chambers, supra*; *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissents.