STATE OF NEBRASKA, APPELLEE, V.
JERRY JACOBSON, APPELLANT.
728 N.W.2d 613

Filed March 23, 2007.    No. S-06-195.

Bradley P. Roth, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., for appellant. ·

Jon Bruning, Attorney General, and J. Kirk Brown for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Jerry Jacobson was convicted of speeding by the county court for Boone County, Nebraska. The district court affirmed his conviction, and on appeal to this court, Jacobson challenges the sufficiency of the evidence which established the accuracy of the radar equipment used to determine the speed of his vehicle. He claims the county court erred in admitting evidence regarding the accuracy of the radar unit.

Nebraska law requires reasonable proof that the radar unit was accurate and functioning properly. This standard necessitates at least some indication of accuracy in the instrument used to test the radar unit. The arresting officer used tuning forks to test the accuracy of his radar unit, and a document attesting to the tuning forks' accuracy was admitted into evidence. The issue is whether that document was properly admitted. We affirm.

## SCOPE OF REVIEW

■ A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005).

■ An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error. *State v. Fischer*, 272 Neb. 963, 726 N.W.2d 176 (2007).

## FACTS

Jacobson received a citation for speeding on April 9, 2005. He entered a plea of not guilty, and a bench trial was held in the county court for Boone County. Trooper Timothy Stopak of the Nebraska State Patrol testified that he had clocked Jacobson's

semi-trailer truck traveling 74 m.p.h. in a 55-m.p.h. zone. Stopak said he ran calibration checks on his radar unit to ensure its accuracy for measuring speed at the beginning and end of his shift.

An internal calibration check was conducted automatically when the radar unit was turned on. Additionally, Stopak conducted an external calibration check with two tuning forks. He described this check in the following manner: One tuning fork oscillates at a speed of 25 m.p.h., and the other, 40 m.p.h. Each tuning fork is struck and held in front of the radar unit while it is in the "stationary" mode of operation. If the unit is operating properly, it yields a reading of 25 m.p.h. with the 25-m.p.h. tuning fork and a reading of 40 m.p.h. with the 40-m.p.h. tuning fork. The operator then switches the radar unit to the "moving" mode of operation and holds both oscillating tuning forks in front of the unit simultaneously. If the radar unit is working properly, it will yield a reading of 25 m.p.h. in the patrol window and 15 m.p.h. in the target window. The acceptable degree of error is plus or minus 1 m.p.h. According to Stopak's calibration checks, the radar unit was working properly on April 9, 2005.

Stopak stated that the tuning forks used to check the accuracy of his radar unit had themselves been certified for accuracy. Technicians for the State Patrol annually certify the accuracy of each radar unit and accompanying tuning forks. The corresponding paperwork is retained by the trooper to whom the equipment is assigned.

Jacobson objected to this testimony. He argued that the technician who conducted the certification should have testified and been available for cross-examination because such evidence was "testimonial" under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The certification document attesting to the accuracy of Stopak's radar unit and tuning forks was admitted into evidence over Jacobson's objection based on foundation.

Jacobson testified that he was not paying close attention to his speed on April 9, 2005, and thought he was traveling at 68 or 69 m.p.h. when he was stopped. He did not believe that he was traveling at 74 m.p.h.

The county court extended to Jacobson the benefit of the radar unit's 1-m.p.h. margin of error and found him guilty of traveling

73 m.p.h. in a 55-m.p.h. zone. Jacobson was fined $125 and was required to pay court costs of $41.50.

Jacobson appealed to the district court, claiming the county court erred in allowing Stopak to testify regarding the certification and accuracy of the radar unit and tuning forks, in receiving into evidence the technician's certificate concerning calibration of the radar unit and tuning forks, and in finding sufficient evidence to support the conviction.

The district court affirmed, and Jacobson timely appealed to the Nebraska Court of Appeals. This court granted the State's petition to bypass review by the Court of Appeals, and the appeal was transferred to our docket.

## ASSIGNMENTS OF ERROR

Jacobson asserts, restated, that the district court erred (1) in determining that sufficient evidence supported the conviction, because the State failed to prove all the elements under Neb. Rev. Stat. § 60-6,192(1) (Reissue 2004); (2) in determining that the county court properly allowed testimony and a document concerning the accuracy of the radar unit and tuning forks; and (3) in determining that Jacobson's right of confrontation was not violated by admission of the document certifying the accuracy of the tuning forks.

## ANALYSIS

### ESTABLISHMENT OF EQUIPMENT'S ACCURACY UNDER § 60-6,192(1)

Jacobson argues the evidence was insufficient to support his conviction because the State failed to establish the accuracy of the radar unit as required by statute. Section 60-6,192(1) provides as follows:

> Determinations made regarding the speed of any motor vehicle based upon the visual observation of any peace officer, while being competent evidence for all other purposes, shall be corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device. . . . Before the state may offer in evidence the results of such . . . speed measurement device . . . the state shall prove the following:

(a) The . . . device was in proper working order at the time of conducting the measurement;

(b) The . . . device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;

(c) The person operating the . . . device and interpreting such measurement was qualified . . . to properly test and operate the . . . device; and

(d) The operator conducted external tests of accuracy upon the . . . device, within a reasonable time both prior to and subsequent to an arrest being made, and the device was found to be in proper working order.

Before evidence of vehicular speed determined by use of a speed measurement device is admissible, the State must establish with reasonable proof that the equipment was accurate and functioning properly at the time the determination of the speed of the vehicle was made. See *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991). This court has recognized that "[w]ithout some proof of reliability in the device used to test for accuracy in a primary device, a test for accuracy of the primary device is a meaningless exercise." *State v. Chambers*, 233 Neb. 235, 241, 444 N.W.2d 667, 671 (1989). Thus, we have held that to present "reasonable proof" that the primary measuring instrument that measures the speed of a vehicle was operating correctly, one must show that such device was tested against a device whose instrumental integrity or reliability had been established. See *id.*

In *State v. Kincaid*, 235 Neb. 89, 453 N.W.2d 738 (1990), the defendant contended that the foundational evidence was inadequate to establish that the radar unit was functioning adequately. The officer testified that he had performed an LED light-segment test, an internal circuitry test, and a tuning-fork test before and after using the radar unit to clock the defendant's vehicle. The tuning forks were supplied by the manufacturer and had been tested at the factory. We concluded that this evidence provided sufficient foundation to establish that the radar unit was operating properly.

In *Lomack*, the officer stated that he had tested the radar unit with a tuning fork. Although this court recognized that a "tuning fork test may be sufficient to satisfy the 'external test'

requirement of [§ 60-6,192(1)]," *Lomack*, 239 Neb. at 372, 476 N.W.2d at 240, we nevertheless determined that the radar-based evidence of speed was inadmissible because the record lacked sufficient "indicia of accuracy" concerning the officer's radar unit, see *id.* at 376, 476 N.W.2d at 242. First, the record failed to establish a particular connection between the tuning fork and the officer's radar unit; thus, evidence of the tuning fork was irrelevant. Second, no evidence had been presented to demonstrate that the tuning fork itself had been properly tested, calibrated, or certified as a reliable gauge of the radar unit's accuracy. We concluded that the "reasonable proof" standard "necessitated at least some indication of accuracy in an instrument used to test a measuring device." *Id.* at 375, 476 N.W.2d at 242.

In the case at bar, the State presented proof that the radar equipment was accurate and functioning properly when the speed of Jacobson's vehicle was determined on April 9, 2005. Stopak, the arresting officer, testified that he had conducted internal and external calibration checks on his radar unit at the beginning and end of his shift and that the radar unit was operating properly. The tuning forks used in the external checks had been specifically assigned to his radar unit and had been certified for accuracy by State Patrol technicians. A "Certificate of Calibration and Accuracy," signed by a State Patrol technician and dated October 6, 2004, was admitted into evidence. It certified that all applicable tests and measurements had been made on Stopak's radar unit and tuning forks and that the tuning forks oscillated at the proper speeds.

In contrast to the facts in *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991), the record in this case establishes a particular connection between the tuning forks and Stopak's radar unit. Evidence was presented that the tuning forks were properly tested, calibrated, or certified as a reliable gauge of a radar unit's accuracy. Thus, evidence of Jacobson's speed determined by the use of Stopak's radar unit was admissible under § 60-6,192(1) because the equipment's accuracy had been established.

AUTHENTICATION OF CERTIFICATION DOCUMENT

■ Jacobson argues it was error to admit the "Certificate of Calibration and Accuracy" because it was not supported by

sufficient foundation. Preliminary questions concerning the admissibility of evidence shall be determined by the judge. Neb. Rev. Stat. § 27-104 (Reissue 1995). Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined on a case-by-case basis. *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005). A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *Id.*

Jacobson contends the certification document lacked proper foundation because it was neither notarized nor in the form of an affidavit. He also claims Stopak had no personal knowledge of the information on the document because he had not tested the tuning forks or witnessed the tuning forks being tested. Stopak did not know the person who signed the certificate or whether the date on the document (October 6, 2004) represented the date the equipment was tested, the date the certificate was signed, or both.

■■ A document is properly authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." See Neb. Rev. Stat. § 27-901(1) (Reissue 1995). An acknowledgment certified by a notary public may provide sufficient authentication, see Neb. Rev. Stat. § 27-902(8) (Reissue 1995), but it is not the only manner in which a document may be authenticated. Under § 27-901(2)(a), the requirement of authentication or identification as a condition precedent to admissibility may be satisfied by testimony that a matter is what it is claimed to be. Proper authentication may also be attained by evidence of appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, sufficient to support a finding that the matter in question is what it is claimed to be. See, § 27-901(2)(d); *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998).

■ This court has observed:

> The plain language of [Neb. Evid. R.] 901 is directory rather than mandatory. . . . We are also guided in our application of rule 901 by federal court decisions explaining Fed. R. Evid. 901, which is effectively identical to Nebraska's rule 901 and upon which it was based. . . .

It has been said that federal rule 901 "does not erect a particularly high hurdle." . . . "[T]he proponent of the evidence is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" . . . The authentication requirement does not demand that the proponent of a piece of evidence conclusively demonstrate the genuineness of his or her article, but only that he or she make a showing "'sufficient to support a finding that the matter in question is what its proponent claims.'"

*Anglemyer*, 269 Neb. at 243, 691 N.W.2d at 160 (citations omitted).

Stopak testified that the "Certificate of Calibration and Accuracy" was made for his radar unit and tuning forks. He had sent the radar unit and tuning forks to the State Patrol technicians in Lincoln, Nebraska, for routine testing. Once the certification was completed, the equipment was returned to Stopak and he was given the certification document to retain. Although Stopak did not witness this testing, he stated that he had witnessed technicians performing similar accuracy tests and issuing similar documents on occasions when the technicians had set up their equipment in his troop area. In October 2003, Stopak was present when his radar unit and tuning forks were tested. He stated that the certification admitted into evidence was in the same form as paperwork regularly issued to officers to show that their instruments had been tested for accuracy. He further testified that testing is done annually. The certification admitted as evidence was dated October 6, 2004. It could be reasonably inferred from Stopak's testimony that October 6, 2004, was the date the radar accuracy check was conducted.

A document may be authenticated under § 27-901(2)(a) by testimony by one with personal knowledge that it is what it is claimed to be, such as a person familiar with its contents. See *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542 (9th Cir. 1990) (corporate registration statement properly authenticated by testimony of board chairman who had personal knowledge of its contents). A showing of specific authorship is not always necessary. See *United States v. Helmel*, 769 F.2d 1306 (8th Cir. 1985) (proper foundation laid for ledger with entries by unknown writer

where document's contents revealed that writer was familiar with particular transactions involved and there was other circumstantial evidence indicating that ledger was properly authenticated).

Stopak's testimony concerning his knowledge of the contents of the certification document and the circumstances surrounding its creation was sufficient evidence to prove that the tuning forks were independently tested for accuracy. The county court did not abuse its discretion in admitting the document.

### Admission of Nontestimonial Statements Under Confrontation Clause

Jacobson contends that his constitutional right to confront the witnesses against him was violated because he could not cross-examine the person who signed the "Certificate of Calibration and Accuracy." The issue is whether the document certifying the accuracy of the tuning forks was testimonial in nature and, therefore, subject to a Confrontation Clause analysis. The Confrontation Clause, U.S. Const. amend. VI, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Court held that an out-of-court statement by a witness that is testimonial may not be admitted, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. In *Davis v. Washington*, 547 U.S. 813, 823, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the Court reiterated that testimonial hearsay was the focus of the Confrontation Clause because it " 'applies to "witnesses" against the accused—in other words, those who "bear testimony." ' " According to the Court, only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis*, 547 U.S. at 821.

The initial step in a Confrontation Clause analysis is to determine whether the statements at issue are testimonial in nature and subject to a Confrontation Clause analysis. *State v. Fischer*, 272 Neb. 963, 726 N.W.2d 176 (2007). If the statements are nontestimonial, then no further Confrontation Clause analysis is required. *Id.*

*Fischer* addressed a similar question. The defendant was charged with driving while under the influence of alcohol. At trial, a police maintenance officer testified that he had conducted accuracy checks on the breath-testing devices used by the police department. As part of the routine check, the officer used a breath-simulator solution with a known concentration of alcohol. The officer testified that along with the solution, he received a document from the supplier certifying that the solution was accurately prepared and that the stated concentration was accurate. Over the defendant's Confrontation Clause objection, the document was admitted into evidence. The defendant was convicted, and on appeal, he argued that he had a right under the Confrontation Clause to cross-examine the person who signed the certificate regarding the preparation of the simulator solution.

Based on the framework of *Crawford* and *Davis*, this court concluded that the certification of the breath-simulator solution was nontestimonial and that therefore, the admission of the certificate was not subject to further analysis under the Confrontation Clause. We explained:

> The statements in [the certification document] were limited to [the tester's] certifications regarding the concentration of the alcohol breath simulator solution. Unlike the statements found to be testimonial in *Crawford* and [*Davis*], the statements in the certificate did not occur in the context of structured police questioning and did not pertain to any particular pending matter. Although there was State involvement in the preparation of the statements . . . in the sense that the certificate was in a form required by [state regulations], the primary purpose for which the statements in [the certification document] were generated and provided to the [police department] was to assure that the solution used to calibrate and test breath testing devices was of the proper concentration. The statements made in the certificate were required to be made as an administrative function whether or not the statements would eventually be used in any criminal prosecution.

> [The certification document] was prepared in a routine manner without regard to whether the certification related to any particular defendant. Indeed, the statements in [the

certification document] were made in February 2004, and the crime in this case did not occur until June 2004. The statements made in [the certification document] were too attenuated from the prosecution of the charges against [the defendant] for the statements to be "testimonial" in the sense required under *Crawford*, *Davis*, and the Confrontation Clause.

*State v. Fischer*, 272 Neb. 963, 971-72, 726 N.W.2d 176, 182-83 (2007).

The facts of *Fischer* are analogous to the present case. A police maintenance officer conducted accuracy checks on the breath-testing device (the primary measuring device) using the breath-simulator solution (the testing device). In the present case, Stopak conducted accuracy checks on his radar unit (the primary measuring device) using the tuning forks (the testing devices). The maintenance officer in *Fischer* testified that the solution had itself been independently tested for accuracy, and a certification of such testing was admitted into evidence. Similarly, Stopak testified that the tuning forks had themselves been independently tested, and a certification of such testing was admitted into evidence. In each appeal, the defendant argued that the statements in the certification document were testimonial in nature.

Applying the reasoning of *Fischer*, we conclude that the statements in the document certifying the accuracy of the tuning forks were nontestimonial. The "Certificate of Calibration and Accuracy" was prepared in the course of the State Patrol technician's routine duties to ensure that the tuning forks used to calibrate and test the radar unit oscillated at the proper speeds. Certification was required annually, whether or not the certification document would eventually be used in a criminal prosecution. The statements contained in the certification document did not pertain to any particular defendant. They were made over 6 months before Jacobson was cited for speeding. Thus, the statements "were too attenuated from the prosecution of the [speeding charge] against [Jacobson] for the statements to be 'testimonial.'" See *Fischer*, 272 Neb. at 972, 726 N.W.2d at 183. No further analysis under the Confrontation Clause is required. The statements in the document certifying the tuning forks as accurate were not testimonial in nature, and the county court did not err in

admitting the document into evidence over Jacobson's objection based on the Confrontation Clause.

### CONCLUSION

The county court did not abuse its discretion in finding that sufficient foundation had been laid for the certification document's admission into evidence. The statements in the certification document were nontestimonial and, therefore, not subject to further analysis under the Confrontation Clause. Accordingly, the county court did not err in determining that the State had established the accuracy of the radar unit as required by § 60-6,192(1), and we affirm the judgment of the district court.

AFFIRMED.