But the court made no findings on that issue. Consequently, we modify the court's May 15, 2013, order to strike the findings as surplusage. And we therefore have no need to consider Linda's remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[16]

## CONCLUSION

Because the sole issue presented by Dwight's motion was modification of the dissolution decree, the district court should have limited its determination to the existence of fraud or gross inequity. Its consideration of matters extraneous to that issue deprived Linda of due process. We strike the extraneous findings in the court's May 15, 2013, order as surplusage. As so modified, we affirm the order overruling the motion to modify the decree.

AFFIRMED AS MODIFIED.

---

[16] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

---

ALISON RICHARDS ON BEHALF OF MAKAYLA C., APPELLEE,
v. DUSTIN MCCLURE, APPELLANT.
___ N.W.2d ___

Filed February 13, 2015.     No. S-14-092.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
4. **Criminal Law: Statutes.** Nebraska's stalking and harassment statutes are given an objective construction, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis.

5. **Criminal Law: Judgments.** Under Nebraska's stalking and harassment statutes, the inquiry is whether a reasonable victim would be seriously terrified, threatened, or intimidated by the perpetrator's conduct.

6. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

Appeal from the District Court for Scotts Bluff County: Leo Dobrovolny, Judge. Reversed and remanded with directions.

Lindsay R. Snyder, of Smith, Snyder & Petitt, a general partnership, for appellant.

No appearance for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

In December 2013, Alison Richards, the appellee, on behalf of her minor child Makayla C., filed a petition and affidavit for a harassment protection order against Makayla's boyfriend, Dustin McClure, the appellant, in the district court for Scotts Bluff County. An ex parte harassment protection order was filed by the district court on December 31, 2013, and McClure requested a show cause hearing. After the hearing, the district court filed its order on January 21, 2014, in which it ruled that the harassment protection order shall remain in effect for 1 year. McClure appeals. Because we determine that exhibits 1 and 6 were improperly received into evidence and that there was insufficient evidence to support the issuance of the harassment protection order, we reverse, and remand with directions to vacate the harassment protection order.

## STATEMENT OF FACTS

On December 30, 2013, Richards, on behalf of her minor child Makayla, filed a petition and affidavit (hereinafter the pleading) to obtain a harassment protection order against McClure. The pleading alleged that Makayla was 17 years old. Cell phone records listing dates and times of text messages between McClure and Makayla from December 24 through

28 were attached to the pleading. Richards alleged that the cell phone records list shows "the obsessiveness of contacts" between McClure and Makayla. Also attached to the pleading are printed screenshots of text messages between McClure and Makayla, which the pleading alleged show "the content of each text" in the cell phone records list.

On December 31, 2013, the court filed an ex parte harassment protection order against McClure. On January 2, 2014, McClure requested a hearing.

An evidentiary hearing was held on January 15, 2014. At the hearing, Richards, on behalf of Makayla, was present but without counsel. Richards made numerous arguments as to why the harassment protection order should be entered, but she was not called as a witness, nor were her assertions made under oath. Makayla was also present at the hearing, but she did not testify.

The court asked Richards if she had evidence to present, and Richards stated that she wanted to present evidence of the cell phone records list and screenshots of the text messages that were attached to the pleading. The court asked if she had copies of the documents with her to offer at the hearing, and Richards responded that she did not.

Richards stated that she obtained the cell phone records list through her online account with the telephone company and that she pays for Makayla's cell phone. To get the pictures of the actual text messages, Richards stated that she took "screenshot[s] on [Makayla's] phone," which "shows the actual screen of the text messages," and she then e-mailed those pictures to herself and printed them out.

McClure's counsel objected to the offer of the cell phone records list and the screenshots of the text messages on the bases that they were not properly marked and presented as evidence at the hearing and lack of foundation.

The court made a ruling conditionally receiving the list and messages and stated to Richards:

> I will make a few concessions for you because you are not an attorney, but not many. But, I will consider the attachments to the petition . . . .
>
>     . . . .

. . . I will consider that as Exhibit No. 1. After the hear-
ing, ma'am, you will have to make arrangements to get
these documents copied —

. . . .

. . . so we have a proper record. And, you can't bring
your other copies because what we are using is these ones
in the court file. So you will have to make arrangements
with the Clerk of [the] Court to actually copy these ones
that are in here.

McClure contends that Richards did not follow through
on the court's direction regarding exhibit 1. Exhibit 1 is not
included in the bill of exceptions.

Following discussion regarding exhibit 1, Richards stated
that she did not have any witnesses to call to testify. McClure
moved for a directed verdict, which the district court denied.

McClure called his grandmother as a witness. She testified
that Makayla had stated to her that Makayla did not want the
protection order in place "[b]ecause [Makayla] wants a rela-
tionship with [McClure] and nothing in the petition or harass-
ment protection order is there to harm her."

McClure also testified in his own behalf. McClure testi-
fied that at the time of the hearing, he was 20 years old and
Makayla was 17 years old. He testified that Makayla was his
girlfriend and that they had been in a relationship "[o]ff and
on" for 3 years. McClure testified that he never intentionally
tried to threaten, intimidate, or scare Makayla by the text mes-
sages. He generally testified that he wanted the court to set
aside the protection order and that it was his understanding
Makayla did not want the protection order. In response to the
court's questioning, McClure further testified that the name
"Brian Bell" shown at the top of the screenshots of the text
messages was a "fake name" that Makayla had programmed
into her cell phone in lieu of McClure's name.

On rebuttal, Richards offered five exhibits, numbered 2
through 6, and McClure objected to all five exhibits. The court
refused to receive four of the exhibits, numbered 2 through 5,
but it received exhibit 6.

Richards described exhibit 6 as a letter from an anony-
mous source which she had received regarding McClure and

Makayla's relationship when Makayla was 15 years old. The undated letter stated:

> Dear Ms. Mitchell:
>
> Disregard this letter if your daughter is not Makayla . . . .
>
> I am a concerned adult and I am choosing to remain anonymous. I am a parent though.
>
> I am concerned about the relationship your daughter is in with . . . McClure.
>
> He speaks of her in derogatory ways around his peers, mostly about the sexual activity that he and your daughter share regularly. . . .
>
> You can count all of this as hearsay or you can take this information and protect your daughter. . . .
>
> Concerned.

McClure's counsel objected to exhibit 6 and stated:

> And, Exhibit 6, this is an anonymous letter to Ms. Mitchell. I don't know who Ms. Mitchell is. I'm aware that the parties are . . . Richards and Makayla . . . . Nobody has signed this. I object on authentication, I object on foundation. Nobody is here to say where it came from and, additionally, it's hearsay. It has no date on it. So I'm, also, going to object on relevancy.

In receiving exhibit 6, the court stated:

> Exhibit No. 6 is some sort of communication, an anonymous communication. I'm going to receive it. It's not hearsay because I don't think anything in here to be an assertion. It's just simply something that . . . Richards indicated that she received which prompted her to do apparently what she is doing now. So I don't think it is an assertion, just simply something that she received.

Following the evidentiary hearing, the district court filed its order on January 21, 2014, in which it continued the harassment protection order and put it in place for 1 year. In its order, the court determined that a parent can bring an action on behalf of his or her minor child pursuant to Neb. Rev. Stat. § 25-307 (Reissue 2008). The court stated that "[t]he issue here is whether a parent of a minor can secure a harassment protection order against someone when the parent

considers the conduct harassment, but clearly the minor does not." The court determined that the "evidence shows willing two-way conversation via text messaging between" McClure and Makayla and further stated:

There is no evidence that Makayla is seriously terrified, threatened, or intimidated. She is a willing and equal participant in the communications which make up the evidence in the case. Nothing in [McClure's] testimony, or his grandmother's, indicates Makayla is participating in the communications due to threat, intimidation, or some form of coercion.

Without citing to any authority, the court then determined that "a parent may bring a harassment protection order action against another when the parent is acting in the best interests of their [sic] child, regardless of whether the child may consider themselves [sic] harassed." The court found that McClure's conduct was "seriously threatening." The court stated that there is a 3-year age difference between McClure and Makayla, that the relationship began when Makayla was 14 years old, that McClure and Makayla's relationship has been forbidden by Richards, that McClure encourages Makayla to use marijuana with him, and that the nature of their relationship appears to be sexual. The court stated that Richards "has good reason to be concerned for her daughter's well-being, and a reasonable parent would consider [McClure] to be a threat to Makayla's safety and proper upbringing." The district court ordered that the harassment protection order remain in effect for a period of 1 year.

McClure appeals.

## ASSIGNMENTS OF ERROR

McClure claims that the district court erred when it (1) received exhibit 1—cell phone records list and screenshots of text messages—into evidence because, inter alia, the exhibit was never made part of the record; (2) received exhibit 6—anonymous letter—into evidence based on various objections; (3) continued the harassment protection order against McClure for a period of 1 year because there was insufficient evidence; and (4) entered the harassment protection order against

McClure on the basis of Richards' concern for Makayla rather than the impact on the alleged victim, Makayla.

## STANDARDS OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

[3] A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

## ANALYSIS

McClure claims that due to a lack of evidence, the district court erred when it continued the harassment protection order against him. He claims in particular that the court erred when it admitted exhibits 1 and 6 into evidence. We agree that the court erred when it admitted exhibits 1 and 6 into evidence, and upon our de novo review of the record, we determine that there was insufficient evidence to support the issuance of the harassment protection order.

The harassment protection order in this case was entered on the basis of Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2014), the purpose and terms of which are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2008). Section 28-311.02 provides in relevant part:

(1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any

restraint on their personal liberty and which will not pro-
hibit constitutionally protected activities.

(2) For purposes of sections 28-311.02 to 28-311.05,
28-311.09, and 28-311.10:

(a) Harass means to engage in a knowing and willful
course of conduct directed at a specific person which
seriously terrifies, threatens, or intimidates the person and
which serves no legitimate purpose;

(b) Course of conduct means a pattern of conduct com-
posed of a series of acts over a period of time, however
short, evidencing a continuity of purpose, including a
series of acts following, detaining, restraining the per-
sonal liberty of, or stalking the person or telephoning,
contacting, or otherwise communicating with the person.

Regarding issuance of a harassment protection order,
§ 28-311.09 provides in relevant part:

(1) Any victim who has been harassed as defined
by section 28-311.02 may file a petition and affidavit
for a harassment protection order . . . . Upon the filing
of such a petition and affidavit in support thereof, the
court may issue a harassment protection order without
bond enjoining the respondent from (a) imposing any
restraint upon the person or liberty of the petitioner, (b)
harassing, threatening, assaulting, molesting, attacking,
or otherwise disturbing the peace of the petitioner, or (c)
telephoning, contacting, or otherwise communicating with
the petitioner.

(2) The petition for a harassment protection order
shall state the events and dates of acts constituting the
alleged harassment.

. . . .

(4) A petition for a harassment protection order filed
pursuant to subsection (1) of this section may not be
withdrawn except upon order of the court. An order
issued pursuant to subsection (1) of this section shall
specify that it is effective for a period of one year unless
otherwise dismissed or modified by the court. Any per-
son who knowingly violates an order issued pursuant to

subsection (1) of this section after service or notice as described in subdivision (8)(b) of this section shall be guilty of a Class II misdemeanor.

. . . .

(7) Any order issued under subsection (1) of this section may be issued ex parte without notice to the respondent if it reasonably appears from the specific facts shown by affidavit of the petitioner that irreparable harm, loss, or damage will result before the matter can be heard on notice. . . . If the respondent wishes to appear and show cause why the order should not remain in effect for a period of one year, he or she shall affix his or her current address, telephone number, and signature to the form and return it to the clerk of the district court within five days after service upon him or her. Upon receipt of the request for a show-cause hearing, the court shall immediately schedule a show-cause hearing to be held within thirty days after the receipt of the request for a show-cause hearing and shall notify the petitioner and respondent of the hearing date.

[4,5] Application of the law governing harassment protection orders has been summarized as follows:

Nebraska's stalking and harassment statutes are given an objective construction and . . . the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable [victim] would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id*.

*Glantz v. Daniel*, 21 Neb. App. 89, 101, 837 N.W.2d 563, 572-73 (2013).

We have recognized that the procedures at a show cause hearing might be less elaborate than those commonly used at civil trials, but we have concluded that "at a minimum, testimony must be under oath and documents must be admitted into evidence before being considered." *Mahmood v. Mahmud*, 279 Neb. 390, 398, 778 N.W.2d 426, 433 (2010). Where the evidence is insufficient, the appellate courts have

reversed and vacated harassment protection orders issued by lower courts. See, e.g., *Mahmood v. Mahmud, supra*; *Glantz v. Daniel, supra*; *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

In this case, McClure contends that exhibits 1 and 6 were improperly admitted into evidence and that in the absence of these documents, the evidence is insufficient. We agree.

Exhibit 1 was described as consisting of cell phone records listing the dates and times of text messages between McClure and Makayla from December 24 through 28, 2013, and printed-out screenshots of the contents of those text messages. The records list and screenshots had initially been attached to the pleading filed in this case.

At the show cause hearing, in response to the district court's questioning, Richards stated that she wished to present the records list and screenshots as evidence but that she did not have those documents to offer as exhibits at the hearing. The court conditionally received the records list and screenshots, denominated this group as "exhibit 1," and directed Richards as follows: "After the hearing, ma'am, you will have to make arrangements to get these documents copied . . . so we have a proper record."

Exhibit 1 is not included in the bill of exceptions; McClure asserts that Richards failed to copy and submit the documents. The pleading was not received as evidence at the hearing. And, in any event, "the allegations of a petition require proof by evidence incorporated in the bill of exceptions." *Mahmood v. Mahmud*, 279 Neb. at 398, 778 N.W.2d at 432. We have stated in particular that documents must be properly admitted into evidence at contested factual hearings in protection order proceedings to be considered by the trial court. See, *id*.; *Sherman v. Sherman, supra*.

[6] Upon appeal, a bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Bedore v. Ranch Oil Co*., 282 Neb. 553, 805 N.W.2d 68 (2011). Based on the facts that the court's receipt of exhibit 1 was conditioned on Richards' copying the documents and submitting them for inclusion in the record and

that the exhibit was not made part of the bill of exceptions, it is not available for consideration on appeal.

Regarding exhibit 6, after McClure had rested, Richards stated that she wished to offer exhibit 6. In her offer of exhibit 6, Richards described the exhibit as an undated letter from an anonymous source which she had received regarding McClure and Makayla's relationship when Makayla was 15 years old. McClure objected to exhibit 6 on the bases of authentication, foundation, inadmissible hearsay, and relevance. McClure's objection to the receipt of exhibit 6, based on lack of authentication, should have been sustained, and the court erred when it overruled the objection and received exhibit 6.

With respect to authentication, Neb. Evid. R. 901, Neb. Rev. Stat. § 27-901(1) (Reissue 2008), provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The letter was not self-authenticating. See Neb. Evid. R. 902, Neb. Rev. Stat. § 27-902 (Reissue 2008). But we have recognized that authentication of letters may be provided by testimony. See *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992). See, also, *State v. Jacobson*, 273 Neb. 289, 728 N.W.2d 613 (2007). See, also, § 27-901(2)(a). To properly authenticate a letter, the witness must provide personal knowledge regarding the important facts surrounding the letter. See *State v. Timmerman, supra*. And "[a]lthough a document must generally be authenticated to be admissible in evidence, its mere authentication does not invariably mean that it is admissible." 29A Am. Jur. 2d Evidence § 1048 at 389 (2008). That is, the document, once authenticated, remains subject to meeting the rules of evidence regarding admissibility. See *id*.

Exhibit 6 was an undated letter addressed to a "Ms. Mitchell" from an anonymous source. The important facts missing from the face of the letter which needed to be supplied by testimony included the date the letter was written, the author of the letter, and an explanation of the recipient "Ms. Mitchell." Richards did not testify under oath regarding exhibit 6, and even a generous reading of her unsworn

offer does not satisfactorily answer these questions surrounding the letter. Without such authentication presented under oath, exhibit 6 was not properly authenticated, and therefore, exhibit 6 was not admissible.

Viewing the evidence as a whole, we note that neither Richards nor the alleged victim, Makayla, testified at the hearing in support of the issuance of the harassment protection order. Compare *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (involving case where victim testified at show cause hearing on protection order). McClure presented evidence against the issuance of the harassment protection order. As explained above, exhibits 1 and 6 were not properly in evidence, and there were no other exhibits received into evidence on Makayla's behalf. Upon our de novo review of the record, we determine there was insufficient evidence properly considered upon which the issuance of a harassment protection order could be based. The state of the record is similar to the situation in *Mahmood v. Mahmud*, 279 Neb. 390, 398, 778 N.W.2d 426, 433 (2010), wherein we stated: "In light of the fact that the court had no evidence upon which it could base its findings [supporting issuance of the order], we find in our de novo review that the evidence is insufficient to support the protection order."

## CONCLUSION

Because there was insufficient evidence, we reverse, and remand with directions to vacate the harassment protection order.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., participating on briefs.